**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREEM EADDY,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT THERESA** | : | **NO.  19-450** |
| **DELBALSO,** *et al.,* | : | |
| **Respondents.** | | |

**RESPONSE**

Petitioner, Kareem Eaddy, is a Pennsylvania state prisoner serving a mandatory life sentence for first-degree murder, burglary, and related offenses. Before this Court are his *pro se* petition for a writ of habeas corpus (ECF 1), his counseled memorandum of law in support of his petition for writ of habeas corpus (ECF 18), and his counseled amended petition for a writ of habeas corpus (ECF 39).

After careful review of the record, Respondents conclude that Eaddy is entitled to a federal evidentiary hearing on two of his claims: Claim 4 in his *pro se* petition and Claim 6 in his *pro se* petition as amended by his counseled amended petition. Eaddy has proffered sufficient evidence as to each claim to demonstrate that an evidentiary hearing would have the potential to establish the merit of these claims. In particular, whether Detective Dove committed misconduct in taking an eyewitness's statement and whether trial

counsel rendered ineffective assistance with regard to a facially inapplicable consciousness-of-guilt instruction. A hearing on Eaddy's claim is not foreclosed by 28 U.S.C. § 2254(e)(2) and the Supreme Court's recent decision in *Shinn v. Ramirez*, 142 S.Ct. 1718, 1735 (2022), because Eaddy diligently sought a hearing in state court and therefore cannot be deemed at fault for the lack of factual development of these claims. Respondents respectfully request that after the evidentiary hearing, they be permitted to respond to the substance of all the claims raised by Eaddy.

## FACTS AND PROCEDURAL HISTORY

### A. Evidence Presented at Trial

Christopher Lomax was shot and killed on June 22, 2008 at about 1:45 a.m. outside the Rumors bar in Philadelphia. N.T. 2/2/11 at 46, 50.

Broadly, the Commonwealth's theory at trial was that Eaddy had stolen money from Lomax's friend Tyree Graham, precipitating the dispute between Eaddy and Lomax inside Rumors bar. N.T. 2/2/11 at 27, 60. A little while later, Eaddy shot Lomax outside the bar seven times, killing him. *Id.* at 27. At trial, the defense argued that Eaddy was not the shooter and that Eaddy did not fit eyewitnesses' description of the perpetrator as skinny. N.T. 2/8/11 at 61. The defense argued that this and other contradictions in the witnesses' testimony gave rise to reasonable doubt. N.T. 2/8/11 at 61.

2

The Commonwealth presented a total of six lay witnesses to testify about the events inside and outside the bar. None of the witnesses testified at trial that they saw Eaddy shoot Lomax.

Tyree Graham testified consistently with his police statement that he was with Lomax at the bar but he did not see the perpetrator. N.T. 2/2/11 at 77. He testified that he saw Eaddy outside the bar on the night of the shooting but denied that Eaddy was the person with whom Lomax had gotten into a dispute inside the bar. N.T. 2/2/11 at 47–48, 50.

The prosecution presented two witnesses who did not see the crime but who testified that Graham had implicated Eaddy. Kwame Mapp and Jahmil Miller testified that, after the shooting, Graham had told them that he had seen the perpetrator and it was Eaddy. N.T. 2/2/11 at 112; N.T. 2/3/11 at 15, 17. For his part, Graham confirmed speaking to both men but testified that he had told Mapp that he had heard that Eaddy had shot Lomax, not that he had seen it. N.T. 2/2/11 at 71.

Darnell Clark testified consistently with his police statement that he did not see the shooting but did see a confrontation inside the bar between Lomax and a second person. N.T. 2/2/11 at 147. On the night of the shooting, he described this second person as 5′9, 140–145 pounds, and in his 30s. N.T. 2/2/11 at 151. Eaddy, at the time of the shooting, was 5′7, 190 pounds, and

23 years old. N.T. 2/8/11 at 42. When presented with a photo array four months after the shooting, Clark stated that two men in the array looked familiar, and he circled the photo of Eaddy because his facial features were similar to the person who had fought with Lomax. N.T. 2/2/11 at 56.

Renee Smith testified that she was not at Rumors bar the night of the shooting and therefore did not see it. N.T. 2/3/11 at 80. She was confronted with an unsigned statement[1] that Philadelphia Police Detective George Fetters testified was a verbatim statement from Smith, which stated that she saw the shooting and Eaddy was the perpetrator. N.T. 2/3/11 at 81, 109.

Lakia Bunch testified that she left Rumors bar prior to the shooting, and therefore did not see it. N.T. 2/4/11 at 5. She too was confronted with a statement in which she allegedly told Detective Ronald Dove that she saw the shooting and Eaddy was the perpetrator. N.T. 2/4/11 at 7, 69. Detective Dove testified that this was a verbatim statement. Bunch testified that the signatures and writing on the statement were not hers and that she did not

---

[1] This unsigned statement was admitted as substantive evidence of guilt contrary to the strictures of the Pennsylvania *Brady-Lively* doctrine which requires that statements be signed and adopted before they can be introduced as substantive evidence. *See Commonwealth v. Brady*, 507 A.2d 66 (Pa. 1986); *Commonwealth v. Lively*, 610 A.2d 7 (Pa. 1992). A claim related to this error is also raised in Eaddy's habeas petition, but no hearing is required to resolve the issue. The potential merit of this claim, however, further underlines why an evidentiary hearing is warranted on the two claims discussed in this response.

remember being asked almost any of the questions in the statement. N.T. 2/4/11 at 7, 8, 13, 18, 20. She testified that she had been brought in for questioning, she told detectives that she did not see the shooting, and she never signed any statement. N.T. 2/4/11 at 6–7. Bunch had also testified at the preliminary hearing and had also denied at that proceeding that she had signed the statement. N.T. 2/4/11 at 54. At trial, the Commonwealth called the preliminary hearing ADA, James Berardinelli, who testified that, prior to the preliminary hearing, Bunch said to him and Detective Fetters that she would not testify about her statement in court because Eaddy knew her whole family and she was frightened. N.T. 2/4/11 at 54. Berardinelli testified that, "[b]y the end [of their conversation], she kind of curled in a ball in her chair and was sort of rocking." N.T. 2/4/11 at 54. Detective Fetters testified that prior to the preliminary hearing Bunch was so "petrified" that she "fell on the ground." N.T. 2/7/11 at 138.

Eaddy was arrested on July 28, 2008, over a month after the shooting, in an incident that he was separately charged with, a burglary that was tried jointly at this trial. N.T. 2/3/11 at 142. Officer James Boone and his partner saw Eaddy sitting on the porch of a residence; Officer Boone's partner asked if Eaddy lived there. N.T. 2/3/11 at 146-47. Eaddy cursed at the officers, and

when the officers exited their patrol vehicle, he began running across a se-

ries of porches, hurdling the wrought-iron porch railings. N.T. 2/3/11 at 149.

Eaddy dropped a gun as he ran, which was recovered by officers. N.T.

2/3/11 at 151. Eaddy ran into a home that the Commonwealth argued he did

not have permission to enter, and he was eventually brought outside by a

SWAT team. N.T. 2/3/11 at 153. A firearms expert testified that the gun was

later compared to shell casings recovered at the scene of Lomax's shooting,

and the shell casings were fired from the gun Eaddy dropped. N.T. 2/4/11

at 149.

On the final day of the Commonwealth's evidence, Jahmil Miller (one of

the two men who had testified that another man had said Eaddy killed Lo-

max) was recalled. Miller testified that, when he was being transported

back to the county jail after his testimony, he was physically assaulted by

two men, and one of them said, "[h]e a rat…. He took the stand on my man,

[Eaddy]." N.T. 2/7/11 at 86. No evidence was presented that Eaddy directed

the attack or was involved with it in any way, as the judge acknowledged

at sentencing by stating, "I don't know that you personally had anything to

do with the witness intimidation. But I do believe that people who loved

you thought it appropriate to intimidate the witnesses in this case." N.T.

2/9/11 at 29–30. After the evidence was presented, trial counsel, Nino Tinari,

asked the court to instruct the jury that Miller's testimony about being assaulted could only be used to assess Eaddy's consciousness of guilt. N.T. 2/7/11 at 149. The judge did as counsel asked, instructing the jury: "When a person takes certain actions, makes certain statements, engages in a particular conduct, that tells you whether they have a consciousness of guilt. Now, consciousness of guilt in and of itself can never support a verdict of guilty. But the law recognizes that a person who is not guilty would not act in a particular way. And a person who might be guilty would act in a different type of way." N.T. 2/7/11 at 150.

During the final instruction to the jury, the Honorable Renee Cardwell Hughes illustrated the concept of reasonable doubt by stating that overcoming reasonable doubt was like agreeing to the only surgery that could save a loved one's life. N.T. 2/8/11 at 135–38.

During deliberations, the jury asked to see pictures of the crime scene as well as the statements of both Bunch and Taylor. N.T. 2/8/11 at 176.

### B. Conviction, Sentencing and Appellate Proceedings

The jury convicted Eaddy of first-degree murder, burglary, possessing an instrument of crime, criminal trespassing, and two violations of the Uniform Firearms Act. The trial court separately convicted him of possessing a firearm by a person prohibited. The court sentenced Eaddy to a mandatory

term of life in prison for first-degree murder, with concurrent terms for the remaining offenses.

Eaddy appealed, arguing, among other things, that: (1) the police lacked reasonable suspicion to pursue him; (2) the trial court erred in consolidating his homicide and burglary cases; and (3) the trial court erred in admitting Smith's statement to police. The Pennsylvania Superior Court affirmed the judgment of sentence and found the three aforementioned claims to be waived. Superior Court Opinion, 8/27/12, 16–19. The Pennsylvania Supreme Court denied allowance of appeal, *Commonwealth v. Johnson*, 75 A.3d 1281 (Pa. 2013) (Table), and the United States Supreme Court denied certiorari, *Johnson v. Pennsylvania*, 572 U.S. 1119 (2014).

Eaddy filed a timely petition under Pennsylvania's Post Conviction Relief Act. Appointed counsel, Mitchell Strutin, filed an amended petition. In that petition Eaddy requested an evidentiary hearing on all of his claims. *See* Amended PCRA Petition 11/28/15, ¶ 150 ("The petitioner is entitled to an evidentiary hearing…to address the issues raised in this amended petition since there are material issues of fact…."). The PCRA court dismissed the petition as meritless without a hearing. Eaddy appealed and raised six claims, including: (1) whether trial counsel was ineffective in allowing the unsigned Smith statement to be introduced as substantive evidence,

8

(2) whether trial counsel was ineffective for requesting a consciousness of guilt instruction regarding Miller's prison assault, and (3) whether Eaddy was entitled to a new trial based upon after-discovered evidence of criminal activities by Detective Dove. *Commonwealth v. Johnson*, 179 A.3d 1105, 1113 (Pa. Super. Ct. 2018). The Superior Court affirmed the dismissal and denied reargument, and the Pennsylvania Supreme Court denied allowance of appeal.

While his first PCRA petition was still pending, Eaddy filed a second PCRA petition in state court. This PCRA petition challenged trial counsel's failure to object to the reasonable-doubt instruction. PCRA counsel acknowledged his potential ineffectiveness for failing to raise this claim in Eaddy's first PCRA petition. *See Commonwealth v. Johnson*, No. 3845 EDA 2016, Application to Withdraw at 2 (Pa. Super. Ct. Aug. 30, 2017). The PCRA court dismissed the second petition as meritless. The Superior Court affirmed the dismissal on different grounds, finding the petition to be premature and untimely. *Commonwealth v. Johnson*, 2020 WL 4882457, at *2–4 (Pa. Super. 2020). The Pennsylvania Supreme Court denied allowance of appeal.

While his second PCRA petition was still pending, Mr. Eaddy filed his habeas petition in federal court. This habeas petition challenged his prior counsel's failure to: (1) preserve his claim that the police lacked reasonable

suspicion to pursue him; (2) object to the Commonwealth's motion to consolidate his cases; (3) preserve an objection to Smith's police statement; (4) properly respond to evidence regarding Miller's assault; (5) raise a claim on direct appeal regarding remarks made by the prosecutor; and (6) object to the reasonable-doubt instruction. He also sought a new trial based on after-discovered evidence regarding Detective Dove. ECF No. 1. The district court stayed the case at Mr. Eaddy's request. ECF No. 11.

After the stay was lifted, ECF No. 19, habeas counsel filed a memorandum of law, briefing three of Eaddy's claims: (1) trial counsel ineffectiveness for failing to object to the reasonable doubt instruction, (2) trial counsel ineffectiveness for asking for a consciousness of guilt instruction regarding Miller's prison assault, and (3) trial counsel ineffectiveness for failing to preserve a challenge to the admission of Smith's police statement. ECF No. 18.[2]

The Commonwealth provided documents in response to Petitioner's request for information related to Detective Dove's misconduct. The Commonwealth provided 21 pages of documents that showed that in 2013 Detective Dove was dismissed from the police force for, among other things, "[f]ailure to cooperate in any Departmental investigation," "[l]ying

---

[2] Eaddy is still pursuing the other four claims raised in petitioner's *pro se* petition even though they were not briefed in the counseled memorandum of law. ECF No. 18 at 4.

or attempting to deceive regarding a material fact during the course of any Departmental investigation," "[a]ny incident, conduct, or course of conduct which indicates that an employee has little or no regard for his/her responsibility as a member of the Police Department," and "[e]ngaging in any action that constitutes the commission of a felony or a misdemeanor which carries a potential sentence of more than (1) year." ECF No. 39, Amended Petition for Habeas Corpus, Exhibit 1 at 9.

Following these disclosures, Eaddy filed an amendment and supplement to his habeas petition in which he newly raised a *Brady* claim regarding the Dove disclosures. ECF No. 39. He attached a declaration from Lakia Bunch, dated April 12, 2022, in which she swore, as she testified at the preliminary hearing and at trial, that she never saw Lomax's shooting. In that declaration, she also stated that, when she spoke with homicide detectives, they had believed her boyfriend at the time was the perpetrator (not Eaddy), and that after testifying at trial, she went straight to the home of her cousin Honey Layton, telling Layton that she had not seen the shooting.

## DISCUSSION

After careful review of the record, Respondents conclude that Eaddy is entitled to a federal evidentiary hearing on two of his claims: Claim 4 in his *pro se* petition and Claim 6 in his *pro se* petition as amended by his counseled

amended petition. Respondents respectfully request that after the evidentiary hearing, they be permitted to respond to the substance of all the claims raised by Eaddy.

> **I.  Eaddy is entitled to an evidentiary hearing on his claims regarding Detective Dove's misconduct.**

Respondents concede that an evidentiary hearing is warranted on this claim in light of Detective Dove's misconduct and serious allegations contained in Bunch's declaration that have support in the record.

An evidentiary hearing is warranted when: (1) AEDPA's § 2254(e)(2) does not "bar[] an evidentiary hearing in the federal habeas proceeding;" and (2), when the petitioner "has proffered sufficient evidence to demonstrate that 'a new hearing would have the potential to advance the petitioner's claim.'" *Siehl v. Grace*, 561 F.3d 189 (3d Cir. 2009) (quoting *Campbell v. Vaughn*, 209 F.3d 280, 286–87 (3d Cir. 2000)). Because petitioner meets both requirements as to his claims regarding Detective Dove, the Court should hold an evidentiary hearing on this claim.

First, AEDPA does not bar an evidentiary hearing. Section 2254(e)(2) places narrow limits on evidentiary hearings on habeas claims; these limits are triggered if the petitioner "'failed to develop' the factual basis of the claim in State court proceedings.'" *Michael Williams v. Taylor*, 529 U.S. 420, 431 (2000) (quoting § 2254(e)(2)). "[A] failure to develop the factual basis of

a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432; *see also Shinn v. Ramirez*, 142 S.Ct. 1718, 1735 (2022) (holding that a petitioner "failed" under § 2254(e)(2) if the factual basis was not developed due to state post-conviction counsel's ineffectiveness). "AEDPA and uniform case law interpreting it provide that, if the habeas petitioner 'has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court, [AEDPA] will not preclude an evidentiary hearing in federal court.'" *Id.* (quoting *Campbell*, 209 F.3d at 287). Thus, if the petitioner sought and was denied "an evidentiary hearing on the relevant issue before the Court of Common Pleas in his post-conviction relief proceeding," there is no bar to a hearing in federal court. *Id.*; *see also Williams*, 529 U.S. at 437.

Here, Eaddy requested an evidentiary hearing in state court on the after-discovered evidence of Dove's misconduct, but his request was denied. Thus, he is not "'at fault' for the undeveloped record in state court." *Shinn*, 142 S.Ct. at 1735; *see also Morris v. Beard*, 633 F.3d 185, 194–96 (3d Cir. 2011) ("[W]hether a petitioner first pursued an evidentiary hearing in state court in the manner prescribed by state law is central to the diligence analysis under § 2254(e)(2)." (citing *Williams*, 529 U.S. at 437)); *Wilson v. Beard*, 426

F.3d 653, 665 (3d Cir. 2005) (substantially same). Therefore, Eaddy did not "fail" to develop his claim, and § 2254(e)(2) does not bar a hearing. While Eaddy did not raise a *Brady* claim before the state courts, the fault for that is not attributed to Eaddy or his counsel, because the Commonwealth turned over the additional *Brady* material related to Dove only after the conclusion of the PCRA process. *See Thomas v. Horn*, 570 F.3d 105 (3d Cir. 2009) ("'Diligence … depends upon whether the prisoner made a reasonable attempt, *in light of the information available at the time*, to investigate and pursue claims in state court'") (emphasis added) (quoting *Williams*, 529 U.S. at 435).[3]

---

[3] No *Brady* claim was raised before the state courts because the Commonwealth did not disclose the *Brady* material until after the conclusion of the state post-conviction proceedings. Thus, Eaddy's *Brady* claim is unexhausted, and he could raise this claim before the Pennsylvania Court of Common Pleas in a serial PCRA petition alleging governmental interference and/or newly discovered facts. *See* 42 Pa.C.S. § 9545(b)(1)(i) and (ii). However, lack of exhaustion does not deprive a federal court of jurisdiction over a claim; rather, it is an affirmative defense for the government to raise, and consequently, one that it can waive. 28 U.S.C. § 2254(b)(3) (state may expressly waive exhaustion). In light of the government's ability to waive this defense, it is incumbent upon prosecutors to determine whether reliance on this procedural bar advances justice. *See Dennis v. Secretary, Pa. Dept. of Corrs.*, 834 F.3d 263, 290 (3d Cir. 2016) (en banc) (the prosecutor's "interest 'in a criminal prosecution is not that he shall win a case, but that justice shall be done.'") (internal alteration omitted) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). Because Eaddy's failure to previously raise this *Brady* claim was due to the Commonwealth's failure to disclose the relevant *Brady* material until after the conclusion of his PCRA proceedings, Respondents do not assert and affirmatively waive any procedural

Second, Eaddy has proffered sufficient evidence to demonstrate that a new hearing would have the potential to advance his claim. *Siehl*, 561 F.3d at 197. Bunch has consistently maintained that her signature was forged and therefore Detective Dove was lying when he testified that the statement attributed to her was a verbatim statement. On April 12, 2022, Bunch again swore in a declaration that she never saw Lomax's shooting. In that declaration, she stated that, when she spoke to homicide detectives, they had believed her boyfriend at the time was the perpetrator (not Eaddy), and that after testifying a trial, she went straight to the home of her cousin Honey Layton, telling Layton that she had not seen the shooting.

From Respondents' review of the record, we conclude that there is at least some support for Bunch's account. Undersigned counsel spoke to Bunch on February 2, 2022, to determine whether her account was sufficiently credible to warrant further review, concluding that it was. Bunch provided an account consistent with her affidavit. A review of the Philadelphia Police Department's homicide file revealed documents concerning Bunch's boyfriend and a notation that Bunch was his girlfriend, information

---

bars that would otherwise bar consideration of the merits of the *Brady* claim involving Dove.

that was not revealed at trial or otherwise previously provided to the defense.[4] This, along with a review of Bunch's signature on her declaration filed with this court, the signature on her preliminary hearing subpoena, and the signatures alleged to be Bunch's on the statement taken by Detective Dove, cause Respondents to agree that a hearing would be appropriate.[5]

---

[4] Bunch's boyfriend was ultimately excluded as a possible perpetrator, and therefore there would be no *Brady* violation for not disclosing that he may have been a person of interest early on in the investigation. However, the homicide file's contents serve to corroborate Bunch's account generally.

[5] Signatures from Bunch's purported statement dated 5/11/09:



Signature on Bunch's recent affidavit:          Signature on the preliminary
                                                 hearing subpoena dated 9/4/09:

## II. An evidentiary hearing should be granted on Eaddy's claim of trial-counsel ineffectiveness for asking for a consciousness-of-guilt instruction.

An evidentiary hearing also is warranted on Eaddy's claim of trial counsel ineffectiveness for asking for a consciousness-of-guilt instruction regarding Miller's prison assault. Eaddy requested an evidentiary hearing on this claim from the state courts but his request was denied, and therefore § 2254(e)(2) as construed by *Shinn* does not bar an evidentiary hearing for the same reasons as the preceding claim. *See supra* at 12–14.

Eaddy has also proffered sufficient evidence to demonstrate that a hearing would potentially advance this claim. In considering the claim, the state court opined that the evidence of assault was admissible because "[a]ny attempt by a defendant to interfere with a witness' testimony is admissible to

_____

show a defendant's consciousness of guilt…. Mr. Miller's testimony was admissible as it shows evidence of Petitioner's consciousness of guilt." *Johnson*, 179 A.3d at 1120. However, there was no evidence that Eaddy participated in or directed the assault. N.T. 2/8/11 at 107; N.T. 2/9/11 at 29–30 (both the prosecutor and trial court stated that there was no evidence that Eaddy participated in or directed the assault). Therefore, the Superior Court's ruling that the attack showed Eaddy's consciousness of guilt was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2). An attack on Miller that Eaddy did not participate in or was not even aware of until after the fact could not suggest consciousness of guilt. *See, e.g., Commonwealth v. King*, 689 A.3d 918, 923 (Pa. Super. 1997) (threats by third persons against a witness only relevant "if the Commonwealth shows that the defendant is linked in some way to the threats.")

However, it was trial counsel who requested the court give a consciousness-of-guilt instruction. Therefore, because counsel's actual strategic choices must be afforded deference, *Strickland v. Washington*, 466 U.S. 668, 681 (1984), an evidentiary hearing is necessary to determine if there was a reasonable strategic basis for requesting this instruction.

### III. Trial counsel's failure to object to the faulty reasonable-doubt instruction was deficient performance, and thus if Eaddy can show prejudice he is entitled to a new trial.

Numerous federal courts have found the failure to object to the substantially identical reasonable-doubt instruction given in this case to be deficient performance. *See Moore v. Rivello*, No. 20-838, 2022 WL 1749250 (E.D. Pa. May 31, 2022) (unpublished); *Brown v. Kauffman*, 425 F. Supp.3d 395, 411 (E.D. Pa. 2019); *Corbin v. Tice*, No. 16-4527, 2021 WL 2550653, at *5 (E.D. Pa. June 22, 2021); *Brooks v. Gilmore*, No. 15-5659, 2017 WL 3475475, at *6-7 (E.D. Pa. Aug. 11, 2017); *McDowell v. DelBalso*, No. 18-1466, 2019 WL 7484699, at *5 (E.D. Pa. Jan 23, 2019), *report and recommendation adopted*, No. 18-1466, 2020 WL 61162 (E.D. Pa. Jan. 3, 2020); *Shields v. Smith*, No. 18-750, 2020 WL 6929097, at *13-15 (E.D. Pa. Oct. 5, 2020), *report and recommendation adopted*, No. 18-750, 2020 WL 6888466 (E.D. Pa. Nov. 24, 2020); *but see Green v. Smith*, No. 18-4734, 2020 WL 10058148, at *11 (E.D. Pa. 4, 2020), *report and recommendation adopted*, No. 18-4734, 2021 WL 2454482 (E.D. Pa. June 16, 2021); *cf. Baxter v. Superintendent Coal Twp. SCI*, 998 F.3d 542, 546-47 (3d Cir. 2021) (assuming that failure to object was deficient), *cert. denied*, No. 21-5826, 2022 WL 516033 (Feb. 22, 2022).

Thus, if Eaddy can establish prejudice, he would be entitled to a new trial,[6] but it is not clear on the existing record whether Eaddy can establish

---

[6] This claim is procedurally defaulted because it was not properly presented in state court. However, Eaddy can overcome the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). Appointed counsel failed to raise this claim in

the requisite prejudice on this claim alone. While we do not believe an evidentiary hearing is necessary to evaluate this claim, we think that Respondents will be in a better position to assess the prejudice resulting from the faulty reasonable-doubt instruction after a hearing on Eaddy's other claims.

## CONCLUSION

For the foregoing reasons, Respondents agree that Eaddy is entitled to a hearing on claims 4 and 6. Respondents respectfully request that, after the

---

Eaddy's first PCRA petition, causing it to be defaulted, and counsel acknowledged in a filing that this may have constituted ineffective assistance of counsel. *See Commonwealth v. Johnson*, No. 3845 EDA 2016, Application to Withdraw at 2 (Pa. Super. Ct. Aug. 30, 2017) (acknowledging counsel may have rendered ineffective assistance and requesting permission to withdraw as a result of the corresponding conflict of interest). Therefore, this Court would address this claim *de novo. See Bey v. Superintendent Green SCI*, 856 F.3d 230, 236 (3d Cir. 2017) (review is *de novo* if the state court did not consider the claim on the merits). Moreover, since no evidentiary hearing on the claim is required, it does not implicate the holding in *Shinn v. Ramirez*, 142 S.Ct. 1718 (2022).

evidentiary hearing, they be permitted to respond to the substance of all the

claims raised by Eaddy.

Respectfully submitted,


/s/*Katherine Ernst*
Katherine Ernst, Esquire
Assistant District Attorney
Federal Litigation Unit

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREEM EADDY,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT THERESA** | : | **NO.  19-450** |
| **DELBALSO,** *et al.,* | : | |
| **Respondents.** | | |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing response was served on June 21, 2022

on all counsel of record *via* this Court's CM/ECF electronic filing system.


/s/ *Katherine Ernst*
Katherine Ernst, Esquire
Assistant District Attorney
Federal Litigation Unit